AUSAs: Celia Cohen, Andrew Rohrbach, Hagan Scotten, Derek Wikstrom

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 3535** |
| UNITED STATES OF AMERICA<br><br>            v.<br><br>MOHAMED BAHI,<br><br>                              Defendant. | <u>**SEALED COMPLAINT**</u><br><br>Violations of 18 U.S.C. §§ 1512 and 1519<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

      JACOB BALOG, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

<u>**COUNT ONE**</u>
**(Witness Tampering)**

      1.      In or about June 2024, in the Southern District of New York and elsewhere, MOHAMED BAHI, the defendant, knowingly used intimidation, threatened, and corruptly persuaded another person, and attempted to do the same, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a federal offense, to wit, BAHI met with five potential witnesses and directed them to lie to law enforcement officers in connection with a federal criminal investigation being conducted by the Federal Bureau of Investigation.

(Title 18, United States Code, Section 1512(b)(3).)

<u>**COUNT TWO**</u>
**(Destruction of Records)**

      2.      On or about July 24, 2024, in the Southern District of New York and elsewhere, MOHAMED BAHI, the defendant, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and in contemplation of such a matter, to wit, BAHI deleted the encrypted-messaging application Signal from his cellphone upon the Federal Bureau of Investigation's arrival at his home to execute a court-issued warrant authorizing the search of BAHI's home and the seizure of his cellphone.

(Title 18, United States Code, Section 1519.)

      The bases for my knowledge and for the foregoing charges are, in part, as follows:

      3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been personally involved in the investigation of this matter, which has been jointly investigated

with the New York City Department of Investigation ("DOI"). This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement personnel, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

4.  From approximately 2022 through the present, MOHAMED BAHI, the defendant, has worked as a Senior Liaison in the Community Affairs Unit of the New York City mayoral administration of a certain public official ("Official-1").

5.  Beginning at least in or about 2018, Official-1 campaigned to be New York City Mayor, in connection with an election to be held in 2021 (the "2021 Official-1 Campaign"). In or about 2020, MOHAMED BAHI, the defendant, solicited campaign contributions for the 2021 Official-1 Campaign.

6.  Since in or about 2021, the FBI and DOI have been investigating, among other things, the receipt of so-called "straw" contributions by the 2021 Official-1 Campaign (the "Federal Investigation"). A straw contribution to a political campaign is a contribution that is made in the name of one donor, for which the donated funds in fact came from a different person. The knowing solicitation and acceptance of straw contributions can violate federal law when, for example, a political campaign makes false statements about straw contributions to a public entity to fraudulently obtain public matching funds based on the contributions, or when the straw contributions are used to smuggle foreign money into a campaign. I am one of the FBI Special Agents conducting the Federal Investigation.

7.  As explained in greater detail below, in or about December 2020, MOHAMED BAHI, the defendant, was involved in organizing a fundraiser for the 2021 Official-1 Campaign at which the donors made straw contributions. In or about 2024, when the FBI was investigating the 2021 Official-1 Campaign's solicitation and acceptance of straw contributions, BAHI took steps to obstruct the Federal Investigation by tampering with multiple witnesses and destroying evidence.

## The December 2020 Fundraiser

8.  Based on my review of records from the New York City Campaign Finance Board (the "CFB"), I know, among other things, the following:

    a.  On or about December 10, 2020, four individuals (each a "Donor," and collectively, the "Donors") associated with the same employer (the "Construction Company") made contributions to the 2021 Official-1 Campaign. Contribution cards for each of the Donors were submitted to the CFB by the 2021 Official-1 Campaign. Each of the Donors' contribution cards listed the Construction Company in the field "employer."

    b.  A fifth person (the "Businessman") also contributed to the 2021 Official-1 Campaign, on the same date and in the same amount as each of the Donors. The Businessman's

2

contribution card, submitted to the CFB by the 2021 Official-1 Campaign, listed the Businessman's employer as "Self," and his occupation as "President." Based on, among other things, my review of open-source information, I know that the Businessman is the founder and chief executive officer of the Construction Company.

   c. Each of the four Donors, and the Businessman, contributed to the 2021 Official-1 Campaign by check, in the amount of $2,000.

   d. All five of the contribution cards submitted by the Donors and the Businessman in connection with these December 10, 2020 contributions had matching, pre-typed information, including the recipient, the names and addresses of the respective Donors, and their employer.

   e. Each of the five relevant contribution cards contained a signature on a line reading "Contributor's Signature." Above the signature line, each contribution card stated: "I understand that State law requires that a contribution be in my name and be from my own funds. I hereby affirm that I was not, nor, to my knowledge, was anyone else, reimbursed in any manner for this contribution; that this contribution is not being made as a loan; and that this contribution is being made from my personal funds or my personal account, which has no corporate or business affiliation."

  9. I have reviewed text messages from electronic devices and accounts belonging to the Businessman, which were obtained pursuant to court-authorized search warrants. Based on that review, I have learned, among other things, the following:

   a. On or about November 19, 2020, a telephone number saved to the Businessman's phone contacts as a variant of the name of MOHAMED BAHI,[1] the defendant, texted the Businessman: "Dec 10th - Thursday 7pm - Your Office," "Private Fundraiser and Dinner for [Official-1]."

   b. On or about December 9, 2020, BAHI texted the Businessman: "…he moved it tomorrow to 5pm. Is that ok?" The Businessman responded: "yes even better."

   c. On or about December 10, 2020, at approximately 4:57 p.m., BAHI texted the Businessman: "im coming now," "i think he is about 15 mins away." Less than ten minutes later, BAHI texted the Businessman: "he's outside," "bringing him in."

  10. Law enforcement has interviewed each of the Donors and the Businessman.[2] Based on my participation in some of those interviews, my discussions with other law enforcement agents

---

[1] Specifically, the number was saved in the Businessman's contacts as "Muhammad Bahi."

[2] Each of these five witnesses was interviewed by the FBI on or about June 13, 2024, and, in sum and substance, denied having been involved in straw donations. Each of these witnesses was subsequently interviewed, pursuant to proffer agreements and while represented by counsel, and it is these counseled, proffer-protected interviews that are described in this paragraph. Each of these witnesses agreed to speak with law enforcement in the hopes of receiving leniency in connection with this investigation. In the course of proffering with the Government, the Businessman admitted his involvement in straw donations to Official-1's mayoral campaigns and

who participated in the interviews, and my review of related reports, I know, among other things, that multiple witnesses confirmed each of the following facts:

  a. The Donors and the Businessman attended a fundraiser for the 2021 Official-1 Campaign held at the Brooklyn headquarters of the Construction Company on December 10, 2020;

  b. Official-1 attended the fundraiser;

  c. MOHAMED BAHI, the defendant, organized and attended the fundraiser, and suggested that the Businessman should reimburse donations by his employees;

  d. Each of the Donors made straw contributions: each of their $2,000 contributions was either reimbursed by, or paid for in advance by, the Construction Company.

### The June 13, 2024 Interviews and BAHI's Witness Tampering

  11. On or about June 13, 2024, in connection with the Federal Investigation, FBI agents executed a court-authorized search warrant at the home of the Businessman, and also served him with a subpoena issued by a grand jury in the Southern District of New York. Around the same time the search warrant was executed, FBI agents also approached each of the four Donors with subpoenas issued by a grand jury in the Southern District of New York, and attempted to interview each of them.

  12. Based on my participation in certain interviews, my discussions with other law enforcement officers who interviewed the Donors and the Businessman as discussed above, and my review of related reports, I have learned, in substance and in part, that:

  a. On or about June 13, 2024, the Businessman called MOHAMED BAHI, the defendant, and informed BAHI that the FBI had executed a search warrant at the Businessman's home that morning.

  b. In the afternoon on or about June 13, 2024, BAHI went to the offices of the Construction Company, where he met privately with the Businessman, and then met with the Businessman and the four Donors.

  c. During the private meeting between BAHI and the Businessman on or about June 13, 2024, BAHI told the Businessman that he had just spoken with Official-1. BAHI then asked the Businessman to describe his interactions with the FBI. After the Businessman told BAHI that the Businessman had denied having funded straw donations to Official-1 when questioned by the FBI, BAHI advised the Businessman that if he continued to tell that lie to federal investigators the Businessman would be ok.

---

in an unrelated fraud offense. The information these witnesses have provided has proven reliable and is corroborated by other evidence.

    d. BAHI then met with the Businessman and the four Donors. BAHI asked each of them to describe their interactions with the FBI. BAHI took photographs of the grand jury subpoenas that had been served on the Donors and the Businessman.

    e. During the meeting between BAHI, the Businessman, and the four Donors, BAHI encouraged the Donors to lie to federal investigators by denying that they had made straw donations to the 2021 Official-1 Campaign, and remarked that because the Donors' contributions to the 2021 Official-1 Campaign had been reimbursed in cash, the FBI would be unable to prove that the reimbursements had occurred.

    f. On or about June 14, 2024, BAHI again met with the Businessman. During that meeting, BAHI indicated to the Businessman, in substance and in part, that BAHI had met with Official-1, and that Official-1 believed that the Businessman would not cooperate with law enforcement.

<u>BAHI's Destruction of Evidence</u>

  13. Based on my training and experience, including my experience in the Federal Investigation, I know that Signal is an encrypted-messaging application that allows users to set the application to automatically delete messages at certain intervals. Based on my involvement in the Federal Investigation, and my review of both open-source information and the contents of devices and accounts seized pursuant to court-authorized search warrants, I know that Official-1 used Signal to communicate and sometimes encouraged others to do so, and that people who—like MOHAMED BAHI, the defendant—work for Official-1 also used Signal to communicate with Official-1 and others.

  14. On July 24, 2024, in connection with the Federal Investigation, FBI agents executed a court-authorized search warrant at the home of MOHAMED BAHI, the defendant. Based on my discussions with FBI agents who participated in the search, I have learned, among other things, the following:

    a. On July 24, 2024, at approximately 6:00 a.m., FBI agents began knocking on the door of BAHI's home, and calling a phone number known to be used by BAHI to announce that they were present to execute a search warrant. No one answered the door, and BAHI did not answer multiple calls from the agents.

    b. FBI agents then called BAHI's former spouse, who lives at BAHI's home. She answered the phone, and FBI agents identified themselves as federal agents, and told her that they were at the door and wanted to speak with BAHI. BAHI's former spouse initially claimed not to be home. She eventually came to the door, but initially refused to open it.

    c. Some time after BAHI's former spouse came to the door, BAHI himself came to the door, and let the FBI into his home to execute the search warrant.

    d. Once FBI agents were inside BAHI's home executing the search warrant, an agent mentioned to BAHI that the agent had repeatedly called BAHI. This prompted BAHI to take a cellphone (the "Bahi Cellphone") out of his pocket, which the agent then seized pursuant to the warrant. Thus, BAHI had uninhibited access to his cellphone between learning that the FBI was present at his home and the FBI entering his home.

    e. During an interview with FBI agents who were executing the search warrant, BAHI stated, in substance and in part, that he had used the Bahi Cellphone as his personal cellphone for approximately the last few months. BAHI also stated that he was planning to travel to Egypt that evening.

  15. Based on my review of information from the forensic extraction of the Bahi Cellphone, which was performed after the Bahi Cellphone was seized by FBI agents, I have learned, among other things, that Signal was not on the Bahi Cellphone at the time it was forensically searched. Activity logs for the Bahi Cellphone indicated, however, that the Bahi Cellphone had been used to access the Signal application as recently as approximately 12:04 a.m. on July 24, 2024, the day that BAHI's home was searched and the Bahi Cellphone was seized by FBI agents. In other words, the Signal application was deleted from the Bahi Cellphone sometime between approximately midnight and shortly after 6:00 a.m., when the Bahi Cellphone was seized by FBI agents on July 24, 2024.

  16. In the afternoon of July 24, 2024, FBI agents called MOHAMED BAHI, the defendant, to ask him follow-up questions about the Bahi Cellphone. I participated in that call, along with other agents. During the call, BAHI admitted, in substance and in part, that he had recently deleted the Signal application. When agents asked BAHI when that day he had deleted Signal, BAHI stated that he would not disclose when he deleted Signal.

  17. During the interview described in the preceding paragraph, MOHAMED BAHI, the defendant, claimed, in substance and in part, that he had a practice of deleting applications that were suspicious before traveling internationally, in case he was questioned by authorities during that travel. That statement appears to be false. From my review of travel records, I have learned that BAHI traveled to Egypt on or about February 15, 2024, returning to New York on or about February 23, 2024.[3] And, based on my review of the contents of the Bahi Cellphone, I know that BAHI did not delete Signal on that trip, but instead continued to use Signal, including to exchange messages with Official-1 via Signal. Specifically, the Bahi Cellphone contains a screenshot of messages BAHI and Official-1 exchanged during BAHI's travel to Egypt and Yemen, and metadata for the screenshot indicates that the screenshot was created on or about February 19, 2024, during that trip.

---

[3] Based on my review of the contents of the Bahi Cellphone, I believe that BAHI traveled to Yemen by way of Egypt during this trip.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of MOHAMED BAHI, the defendant, and that he be imprisoned or bailed, as the case may be.

                                                                        <u>S/ by the Court with permission</u>
                                                                        JACOB BALOG
                                                                        Special Agent
                                                                        Federal Bureau of Investigation

Sworn to me through the transmission of this Affidavit
by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1,

this <u>7th</u> day of October, 2024.

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

7